Good morning. May it please the Court, my name is Roger Madison. I represent the Plaintiff and Appellant Georgette McNabb. Ms. McNabb had planned to be here but she's unfortunately ill. She's watching the proceedings from her home in Centralia. Today I plan to focus my argument on what I consider to be the two key issues in this case. Of course, I'll do my best to answer whatever questions the Court may have as well. And those two issues are number one, is a purported change of beneficiary for CIGLI benefits effective when it is fraudulent? And secondly, what are the nature and scope of a service branch's duty under 38 U.S. Code 1967, F3 and 4 to notify a service member's spouse when there is a change of beneficiary? In each issue, surprisingly enough, perhaps not so surprisingly, we agree on a lot of those as we go forward because I think without acknowledging that we agree on them, they may cloud the analysis of this case. So on the issue of whether the beneficiary change is void, there are four points of agreement here. First, everybody agrees Ridgeway remains the law. Sergeant McNabb had the right to name whomever he wanted as his beneficiary. We agree on that. So if she had received notice, your client couldn't have stopped him from executing the beneficiary form? That is correct, Your Honor. Secondly, I'm not clear on this and I'm sure counsel will correct me if I'm wrong, there appears to be no dispute that Ridgeway and other case law creates an exception for cases involving fraud on the service member's part. And I'll quote Prudential's brief at page 15 where they talk about the Iacos case and they say the Supreme Court held that the doctrine of fraud could be an exception to a federal regulatory imperative. If the matter does remain in dispute, I would submit that Justice Blackmun, who wrote the narrow majority opinion in Ridgeway, who also wrote for the court two years prior to that in his Squierdo, made it clear and I quote from him, in a trilogy of cases, he's referring to Free, Iacos, and Wisner, the court held that the survivorship rules and federal savings bond and military life insurance programs override community property laws absent fraud or breach of trust by the decedent. That's his Squierdo 439 U.S. at 582. The third point of agreement is that we agree that by merely changing the beneficiary, Sergeant McNabb committed no fraud. And lastly, we agree that my client had no property interest in the Sigley proceeds. So with that out of the way, I'd ask the question, would the narrow majority in Ridgeway reach the same conclusion under these facts? I think not. And there are two significant distinctions here. First, Sergeant Ridgeway didn't commit fraud. In fact, it wasn't even alleged in the complaint. It apparently was brought up at some point in the appellate process. I hope not for the first time before the Supreme Court. But reading from Justice Blackman's opinion in Ridgeway, he says, and I quote, a careful reading of the complaint and the amended complaint in this case reveals no allegation of fraud or breach of trust. And we are not inclined to provide or infer such an allegation when a case comes to us as this one does with the record indicating nothing more than a breach of contract on the part of the deceased service member. So let me interrupt if I can. Ridgeway really was a preemption case, if I recall correctly. And there was already in place a state decree where Ridgeway, in effect, because preemption applies, in effect, it countermanded that state decree, right? Yes. But would they, in Ridgeway, would the parties have been precluded from going back to state court to get relief on some level in light of the fact that the Ridgeway decision preempted the state court relief? I don't know. No, and I think the court in Ridgeway acknowledged that Mrs. Ridgeway would have a remedy, but that remedy would be against the estate of Sergeant Ridgeway. Right. As if the court finds for the opponents, that's what the case would be here. So in here we have nothing comparable to Ridgeway. We do not have a state decree that's extant. We have an expectation that possibly there could be some relief that could be possibly sought after on the state level. So that's a whole different cup of tea than Ridgeway, isn't it? Yes, it is. But the information in Ridgeway and the other cases indicating that the change of beneficiary is not effective if fraudulent remain in place. And so our contention is that that beneficiary change was void because it was fraudulent. Well, where, all right. So, but I don't see where Ridgeway can be distinguished on that basis. Ridgeway just simply said state law was preempted. I don't think he really dealt with the issue of fraud whatsoever. Yes. Yes, because there was no fraud in Ridgeway. All right. So, you know, that's the distinction you draw. I'm not so sure I agree that that's one of substance, but that's the basis for your distinguishing Ridgeway, I guess. Well, I would maintain and I'd contrast the facts of Yachos to Ridgeway. In Yachos, Mr. Yachos. Well, that was community property was really taken, right? That's a really whole different type of situation. The person was deprived the property that they were entitled to under community property laws of the state, right? Yes. But in that case, it was, it also wasn't clear whether there was fraud. Yachos was filed before the free versus bland decision came down. Mr. Yachos had purchased these bonds with community funds, designated his brother as a beneficiary. The court, the Supreme Court remanded for the purpose of finding whether Mrs. Yachos had consented to the use of the funds for buying this insurance policy to benefit the brother. But that didn't implicate the same preemption issues that we have here, did it? I'm not sure I understand the question, Your Honor. Yachos was not really entailed with whether or not something happened here that would preempt the application of the community property laws of the state. I think that's correct, Your Honor. Counsel, if I may ask a question, first of all, to make sure I have in my mind the fraud that your client is alleging, is it saying that the address is unknown when he knew the address? Or is it anything other than that? Well, and the rest of what was on that form, yes, Your Honor. And fraud is determined by federal law under Yachos, and I've cited the federal definition of fraud in our brief from the Glucose case from this court. And what is the substance of the fraud, what I'm trying to understand? The substance? I know that on his form he said that your client's address was unknown in Centralia, but address unknown. Yes, Your Honor. Given the circumstances of this case, where Sergeant McNabb, less than three weeks prior to filling out this form, was held in contempt by the court in the dissolution case, he was aware of that court's contempt powers. Held in contempt for what? In what way does this relate to the fraud? No, in that particular case, Your Honor, Sergeant McNabb was held in contempt for not paying child support or spousal maintenance. Right, okay, so, and that's kind of my point. I don't see how it relates to the allegations that that form was fraudulent. I think what Judge My understanding is that the form indicated that her address is unknown, and your allegation is that that's untrue. The Army certainly had that information, but is there anything else on that form that you think was fraudulent? Yes, the unknown address, the zip code of 00000. That's part of the address, right? Yes. Okay, and what else? Those things were fraudulent when Sergeant Ridgway, and we have evidence in the record that Sergeant Ridgway did in fact know the address. Right, is there anything else on that form that was fraudulent, sir? Nothing other than that information, no. Okay, so let's assume for a minute that that was fraudulent. This is why I asked my first question. If your client had received notice because your contention is that the opposing party knew how to reach her, and in fact sent the death notice to her, I think you conceded that she couldn't have prevented him from executing that form, is that right? That is correct, Your Honor. Well, where does that leave your client? Where that would have left my client at that time is going back to the court in the dissolution case and asking for appropriate relief. Some kind of injunctive relief to prevent him, is that what you're suggesting? No, the court would not have had the power under Ridgway to order him not to change the beneficiary. The court did have the power to order him to go down to State Farm or to Allstate and purchase a replacement policy. So that's, okay, and these are not trick questions. I'm just trying to get at how your client was harmed and your contention is she would have sought another remedy in the form of additional insurance, alternate insurance. Yes. Which she may or may not have been able to obtain from the state court, but that is your position. Yes, and the state court clearly had the power to order that. I've got just five minutes left, so I'm going to skip ahead. The evidence of that fraud were the Christmas card that McNabb made out two months earlier, sent to the correct address, and again, in the context of just having been held in contempt, we believe he purposely defrauded the other parties as well as my client by using an unknown address, knowing full well where she lived. Why don't you feel free to use your four and a half minutes on your opening argument. We'll give you two minutes of extra time. Thank you, Your Honor. So the one distinction between this case and Ridgway is there was fraud alleged in this case, and there's strong evidence of fraud. Secondly, what wasn't set forth in Ridgway was the statutory right to receive notification from the Army under 38 U.S. Code 1967, F3 and 4, which wasn't passed until 2005. I spent a lot of time in this case wondering why it's taken 34 years for a case like this to arise, and I think it's because why in the world, given the extreme amount of power a service member has to designate a beneficiary, why would they ever resort to fraud? And I think the reason is that in this case, Sergeant McNabb knew of the spousal notification provision. He had just been held in contempt in the dissolution case, and that was, in his opinion, the only way to avoid the result that he would be hauled back before Commissioner Schaller and the Thurston County Superior Court to account for this. And I think that's the only reason why it's taken 34 years. There's no reason in most cases to commit fraud, and I think if the Court were to find for us, it could do so on very narrow grounds under the facts of this case. And I would point to Justice Powell's dissent in Ridgway, where he says, the Court also finds, as it must in light of previous decisions, that the preemptive power of this Act does not extend to cases of fraud or breach of trust. I note that the majority took no issue with this language, although they argued with Justice Powell's dissent on many other points, for example footnote 7, footnote 8, at pages 56 and 59 of that opinion. And in fact, the majority acknowledged that a different fact pattern might yield a different result when they state, and this is page 60 of the majority opinion, footnote 9, quote, we need not presently address the legal aspects of extreme fact situations. Our ruling on a situation of that kind is reserved for another day. And again, I think it took 34 years because of the very unusual fact pattern here. I would also note, in the Free v. Bland case, the Court agreed with the Solicitor General's opinion that there was an exception for fraud. And they state the regulations, speaking of the federal bond regulations, are not intended to be a shield for fraud and relief would be available in a case where the circumstances manifest fraud or breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property. That was Chief Justice Warren in the Free case at page 670. So the policy here is that a service member, again, has very broad discretion under Ridgway to designate whomever he wants. But in the words used in Yachos, he should not be permitted to use the supremacy clause as a shield for fraud. The argument that opposing counsel makes that this wasn't fraud on the beneficiary designation, this was a separate form. I've addressed that in the brief, but I just reiterate that Sergeant McNabb could not have made this change without filing the other form. It was a part of the process. If he defrauded anyone in the change of address or the emergency data form, he defrauded them in the entire process. Counsel, could I just quickly ask you, many state courts have standing injunctions in place so that your client or a client in your situation would not have had to seek separate injunctive relief, that is, upon filing a complaint or a petition for disillusion or divorce, there's a standing injunction in place preventing exactly what happened here. I take it that's not, that wasn't in place here in this case? It wasn't in place in this case because it wasn't requested, but even if it had been in this case... So my question goes to a standing injunction, something she would not have had to request. Did you have one of those? There was, there was no standing injunction, but I believe, I probably agree with my colleagues that even if such an injunction had been in place, it would have been unenforceable under Ridgway. I'll reserve the three and a half minutes of my time, Your Honor. Thank you. May it please the Court, I'm Teal Miller on behalf of the Department of Army and the Department of the Veterans Affairs. Ian Morrison is at council table with me from Prudential, and we're going to share our time. I'm going to begin by addressing sovereign immunity, although it hasn't been mentioned yet. The United States, in order to bring a suit for money damages against the United States, a plaintiff has to identify a waiver of the United States sovereign immunity for that type of claim, and this Court and the Supreme Court have made clear repeatedly that only a statute that unambiguously provides money damages against the United States can constitute such a waiver. There is no such waiver in this case. Jurisdiction conferring provisions like that in the Service Members Group Life Insurance Act do not waive the United States' immunity. Do you agree that immunity does not apply in respect to the Army, that there is a duty on the part of the Army to give notification? Do you see a dichotomy here between immunity's application in respect to the U.S. on the one hand and the Army on the other, or is it the same cup of tea? Oh, excuse me. The Department of the Army is immune from a claim for money damages as a Department of the United States. The rule of the sovereign immunity of the United States extends to its departments and agencies. Do you think the Army is entitled to immunity here? I do, Your Honor. On a claim for money damages, there has to be a clear and unambiguous provision providing for money damages as relief against the United States in order for a claimant to bring such a claim. And there is not one here. They have not identified one. The statutory provision 1975 allows for claims against the United States, but it does not provide for money damages. And those terms, some term conferring money damages, must be present in the statute. This Court's recent decision in Oklahvehu Native American Church makes clear that as long as the Court can conceive of some other possible relief provided under such a statute, injunctive relief, for example, a claim for money damages does not stand. So the absence of monetary damages, there's no duty here that satisfies the government's waiver of immunity? I want to tease out the question a little bit. There is a duty to provide notification, but there isn't a claim for money damages provided in the statute when notification is not received. So that duty is an irrelevancy, then, is what you're saying? It's not an irrelevancy. In fact, the military has spent the last two to three years automating the system, providing these kind of notices. It's a duty that the military takes seriously, but it is not one for which Congress has provided money damages. It's commonplace for Congress in other statutory schemes to provide statutory damages. For example, the Privacy Act provides for statutory damages for a failure when somebody's information is erroneously released. But there is no corresponding abrogation of sovereign immunity for the claims against the United States in this case. So the claims against the United States should be vacated and remanded to the district court for dismissal for lack of jurisdiction on grounds of sovereign immunity. I'm happy to address the merits of plaintiff's claims, although counsel for potential is also here to do that. As to those, I'd make three key points. First, federal law provides a service member with an absolute right to designate the beneficiary for his or her life insurance. The notice provision specifically provides that the failure to provide notice does not affect the validity of a beneficiary designation. And third, in this case, there's nothing magical about the notice that plaintiff alleges she didn't receive in terms of triggering her ability to go to the divorce court. She could have sought the injunction she says she was somehow deprived of seeking without notice. How would she do that? She could have, in the divorce proceedings, have asked for the injunction her counsel describes. This is different. This isn't an injunctive relief. Counsel just clarified that. It's not an injunctive relief preventing him from executing the beneficiary designation form. She would be looking instead to require him to obtain alternate insurance or other security out of the marital estate to protect herself and her children. That's right, Your Honor. But she could have sought that even before she received notice. Why would she do that if she didn't have notice? Well, she was in a better position to do it before she got notice, I think. She was in a position where she believed herself to be the designated beneficiary. She could have gone to the court and said, please freeze this circumstance either by requiring him to maintain me as his beneficiary or provide substitute insurance. The notice didn't give her a right under state law to go do that. It might have given her a reason to, but nothing prevented her to do it in advance of getting notice. Counsel, you're shifting grounds. I'm talking about notice and you're talking about whether she had the ability to ask for the relief. And the point is that without notice, she doesn't have a reason to go in and request that kind of a relief. I mean, there's a reason Congress provided for this notice, right? There's children here involved and there wasn't life insurance. Your Honor, there is a reason that Congress provided for the notice. I'll just finish. Unless she's on notice that he's changed the designation, she's under the misimpression that her family's provided for. Your Honor, the background rule is that the life insurance policy belongs to the service member. So she may have believed that she had a right to it, but she never did under federal law. The point is she thought she had it and she did until he changed the designation. That's all I'm saying. I'm not contesting your position about whether or not she had the ability to. In fact, counsel conceded that. Straight out of the box, he conceded she wouldn't have had the ability to prevent him from changing the designation. But it seems to me you're overstating your case. Well, I'm sorry to give that impression. I think that my key point is the first one and the one on which we agree, which is that he had every right to do what he did. Okay, let me ask you a question, and I should know this, so I'll apologize, but tell me what the current Supreme Court standard is for when we would imply a private cause of group life insurance act. Under Lane against Pena and Nordic Villages, it requires an unambiguous statement that money damages are available. And when you have a statute such as this one, where it provides for jurisdiction over a claim, as long as the court can imagine a claim for something other than money damages, that cannot be interpreted as a provision for money damages. So what would be the claim you would imagine here other than for money damages? Under this statutory scheme, the military has the authority to determine whether a service member is in status such that he's insured. So someone could bring a claim disputing the military's determination. For example, there are cases where someone has enlisted but hasn't reported for duty, and there's been a dispute about whether they were in status. So that's the sort of suit that could be brought against the United States under this act. And how would that kind of suit give relief here for the change in beneficiary? That is a suit that could be brought under this act against the United States, and what I'm trying to show is that it's possible to conceive of a case that is not a claim for Look under Lane against Pena and Nordic Villages, as long as you can conceive of a case that is not a claim for money damages, you don't read a jurisdiction-conferring statute. Give me your conceived claim again. A claim against the United States saying you erroneously determined that this service member was not in duty status, was not covered by this insurance. There's an individual who claims, I was a service member covered by this insurance, and the government has determined that they weren't. They bring a claim asking for an injunction or a review of that decision. If that decision is reversed, then they would sue Prudential for money, or whoever the insurance carrier is. If I may. Let me ask you this. Netton v. United States goes back to 1981, it's a Ninth Circuit decision. I think the court held that the particular statute we're talking about, 1975, reflected quote, the United States consent to be sued, but only on actions alleging breach of an explicit duty under the SGLI subchapter, and then later on, that explicit duty was created by the amendment to the statute in 2005, requiring a notification. I don't understand why monetary request is decided or not for the issue of sovereign immunity. FDIC against Meijer, the Supreme Court's decision in FDIC against Meijer makes clear that there are two separate jurisdictional inquiries. One is there jurisdiction over a claim against the United States, and Denton goes to that. There is jurisdiction over claims against the United States, like the one I just described. It's a separate question, a separate inquiry, whether the statutory scheme, whether Congress has provided for money damages, and Denton does not consider that question. That's the failure of jurisdiction here, is the failure to, there's no abrogation of the United States. I don't see where there's a waiver of sovereign immunity in respect to suits against the U.S., but I'm thinking about the Army that has the specific duty that's been imposed by the statute that's not necessarily correlated to monetary damages. It seems that there's a waiver of sovereign immunity in that situation. Do I have this wrong? I believe so, Your Honor. Respectfully, the United States immunity extends to suits against an agency of the United States with respect to sovereign immunity to money damages. Does it not withstand that explicit statutory provision that applies to notification by the Army specifically? The statutory provision, section 1975, authorized suits against the United States on claims arising out of the subsection, but under Lane v. Pena, and Nordic Villages, and Oklahoma Native American Church, and many other decisions of the Supreme Court and this Court, that is not a waiver of immunity to money damages. If I may allow counsel for Prudential to use the rest of the time. Okay, thank you. May it please the Court. I represent the Prudential Insurance Company of America, and Prudential, under the SGLIA scheme, contracts with the government to provide the insurance that covers service members like Sergeant McNabb, and Prudential's obligation is to pay benefits in a very specific order, first to the designated beneficiary, and if there isn't one, then in a precise line of precedence, set forth in the statute. As plaintiff has essentially conceded, nothing she alleges in this case would, if proved, make any difference in Sergeant McNabb's designation of Janelise Smith as the beneficiary. It is agreed that Sergeant McNabb had an unquestioned right to designate whoever or whatever he wanted as the beneficiary under this insurance policy, and there is no claim that he didn't do that. There have been cases, the Rice case was cited by the plaintiff as an example of a situation where there was a question about whether or not the designation had actually been made because the service member was allegedly under undue influence. That is not this case. In this case, there is simply no question that Sergeant McNabb made a valid beneficiary designation. There is no claim of fraud with respect to the beneficiary designation, and under Section 1970A. Well, there is a claim of fraud with respect to the beneficiary designation. The claim of fraud is with respect to the emergency data form, not with respect to the beneficiary designation, and counsel acknowledged that. Well, his position, to be fair, his position is that those have to be read together. I'm not trying to split hairs, and I understand your client's position.  Right, and I think from Prudential's perspective, the statute has been set up to provide for administrative ease as one of the components in this statute, and the Supreme Court has recognized that in dealing with other federal employee insurance schemes, that it's important in being able to provide insurance on these group bases, especially the service members who are in a unique position, that it be administratively easy to apply the statute and the insurance policy. The regulations are also clear on this in making it very clear, the regulations in the statute, that even a failure of notice does not negate the service member's designation, and even if plaintiff could show a plausible claim of fraud, and we submit that she has not done that, that wouldn't change the designation and its effect on Prudential and the requirement that Prudential follow that and pay the benefits to Ms. Smith. It seems like Prudential has the easiest case here. We think so. From our perspective, we had an obligation to follow this designation. There is no question as to the designation. There's no question as to Sergeant McNabb's intent. There are questions circling around in the background about the idea that perhaps Mrs. McNabb could have brought an action or brought proceedings in the divorce case to force him to replace this insurance or to do something else to provide for his family and for her, but again, that would not touch the insurance and it wouldn't change the beneficiary designation. You don't want to gratuitously weigh in on whether or not there's sovereign immunity here or not, I suspect. Respectfully, I'll leave that to the Learned Counsel for the government, who is much more knowledgeable about that issue. Then why do you think that Mr. Madison or his client, Ms. McNabb, wants Prudential here? In other words, why haven't they agreed you could skate away? Well, I think it's the common reason why Prudential is named in lawsuits. It has money. It is a source of funds and it does not have an immunity defense, such as the government, so there's not that problem and I think that's why they have been brought in. They're also the insurer and there are, from time to time, disputes about who's the proper beneficiary and Prudential is dragged into those cases. I think that's why we are here. From our perspective, as Judge Block indicated, it's a very simple case for us. We also don't agree that the Supreme Court carved out a fraud exception under the SGLIA in Ridgeway. There's certainly, and we acknowledge this in our brief, the recognition in the Yatko's case that there may be an exception for fraud as to certain federal regulatory schemes, but the Supreme Court goes to great pains in Ridgeway, the majority does, in saying that there is a clear distinction under the SGLIA because there is no property interest by the spouse in these insurance benefits and that distinguishes it completely from the government bond situations where a community property... The Yatko's case involved an actual property interest. That was the wife was being defrauded of. Correct, correct. And so Yatko's, to our view, is completely distinguishable here and as counsel has conceded, there's no fraud in the beneficiary designation, which controls Prudential's obligations under the policy. And I see our, I think our time is up. Yes, it is. We appreciate the argument. Thank you very much. And we let Mr. Madison return to the stand. Thank you, Your Honor. Since he has broad shoulders, I want to ask him a tough question. Okay. You know, why is Prudential here? And why, I understand your claim against the Army. I don't understand the theory of your claim against Prudential. Your Honor, Prudential is here because it's our position that the 2012 beneficiary designation was void because it was fraudulent. Therefore, if you follow that, Prudential paid the $280,000 of the $400,000 to the wrong beneficiary. And Prudential is liable to my client for the $400,000 because the last effective beneficiary designation designated her as the beneficiary. So I'm hung up on sovereign immunity, I confess. All right? And your adversary says that there is, sovereign immunity has not been waived here, that there's no sovereign immunity that attaches to the Veterans Administration, I guess. And that also applies to the Army as well. What do you say about that? Thank you, Your Honor. That's what I'd hoped to address here. I respectfully disagree with my colleague. She mentioned 38 U.S. Code 1975 that gives the district court jurisdiction. The statute creates a specific explicit duty on the part of the Army to use good faith efforts to notify my client. Our position is they didn't use those efforts. Now, in 28 U.S. Code Section 1346B1, it says in pertinent part, let's see, injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. That statute, if you agree that the SIGLE statute creates a duty on the part of the Army to notify my client or to use good faith efforts, the violation of that duty is a negligent or wrongful act. Nothing to do with the need for monetary damages. I beg your pardon? Monetary damages are an irrelevancy. The fact that it doesn't specifically talk about monetary damages, your adversary seems to think that's the cynic why not. No, it does say above in this provision, it says that the district court shall have exclusive jurisdiction of civil actions on claims against the United States for money damages for violation of those types of obligations that in this case the Army had. But where are the monetary damages here? Monetary damages are had my client received notice as she was supposed to, she would have received some life insurance proceeds. Well, under the statute, there's no question that the beneficiary was changed, and that clearly is an entitlement. So you're talking about the monetary damages being what your client was deprived of possibly obtaining if there was a state court remedy that was available to her? I'm just trying to get this connection. That is, Your Honor. And my position is that the court clearly would have looked at what the parties had done before they decided to divorce. Isn't that kind of speculative? You know, unlike Ridgeway where there was an existing decree, which, you know, turned out to be a preemptive situation. But here we have speculation as to what some court might do. Your pleadings, I think, have to comply with IGBAL, or they have to really have a plausible connection to them.  And I agree with you to a point. But without that relief, my client is left without relief, and Congress meant what it said when it passed this statute. And I'd refer to the Connecticut National Bank v. Germain case. Without some form of relief, my client is left with no remedy. So you'd vote the basic maxim that for every wrong, there's got to be a remedy? Who said that first? I don't know who said that, but I would agree with it. Thank you, Your Honor. I appreciate the court's time. Thank you very much, Mr. Madsen. Okay. Very challenging case. McNabb v. United States Department of the Army et al. Shall be submitted.
judges: Block, Gould, Christen